**DICKINSON WRIGHT PLLC**
STEVEN A. CALOIARO
Nevada Bar No. 12344
Email: scaloiaro@dickinsonwright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel: (702) 550-4400
Fax: (844) 670-4009

*Attorney for Plaintiff*
*SATA GmbH & Co. KG*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SATA GmbH & Co. KG, a German Corporation,<br><br>          Plaintiff,<br><br>v.<br><br>DISCOUNT AUTO BODY PAINT AND SUPPLY L.L.C., a Nevada company D.B.A. LAS VEGAS AUTO PAINT,<br><br>          Defendant. | CASE NO.:<br><br>**COMPLAINT**<br><br>**(JURY DEMAND)** |

Plaintiff SATA GmbH & Co. KG ("SATA") hereby states its complaint against Defendant DISCOUNT AUTO BODY PAINT AND SUPPLY L.L.C., D.B.A. LAS VEGAS AUTO PAINT ("LVAP") as follows:

### INTRODUCTION

SATA is a world leader in the production of paint spray guns, airbrushes, workplace safety and security equipment, and other related products. LVAP is a store and auto shop located in Las Vegas, Nevada.  LVAP is displaying, advertising, offering for sale, and selling goods bearing spurious designations that are identical to the SATA marks.

### JURISDICTION AND VENUE

1.      This is an action for statutory trademark counterfeiting, trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. §



-1-

1051, *et seq.*; for common law trademark infringement and unfair competition; and for patent infringement in violation of 35 U.S.C. § 1, *et seq.*

2. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1119 and 1121, and pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, because this action presents questions arising under the trademark and patent laws of the United States to which Congress has granted exclusive subject matter jurisdiction to the federal courts. This Court has supplemental jurisdiction over Plaintiff's common law claims.

3. This Court has personal jurisdiction over LVAP based upon its infringing acts of advertising, displaying, and offering for sale counterfeit products bearing SATA's marks at its store in Las Vegas, Nevada.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(b) because LVAP does business in Nevada, has committed acts of infringement in Nevada, and is subject to personal jurisdiction in Nevada.

## THE PARTIES

5. SATA is a German corporation established in 1907 and organized under the laws of Germany.

6. Upon information and belief, LVAP is a domestic limited-liability company located at 5280 S. Valley View Blvd., Suite A, Las Vegas NV, and doing business as LAS VEGAS AUTO PAINT.

## GENERAL ALLEGATIONS

### *Background on SATA*

7. SATA is a leading manufacturer of paint spray guns, paint spray gun reservoirs, and related equipment principally used to paint automobiles.

8. SATA's products are designed and manufactured in Germany and are sold to distributors worldwide.

9. Over the past century, SATA has been a leader in the production of paint spray guns, paint spray gun reservoirs, and related equipment. SATA's paint spray guns are highly

valued, well known for their quality, performance, and durability, and are used by professional car repair businesses, automobile manufacturers, yacht and boat builders, carpenters, painters, airbrush/design creators, and hobbyists worldwide.

10. SATA offers a wide variety of paint spray guns, including handheld spray guns and spray guns for automatic painting systems.

11. SATA's strong reputation and goodwill in the industry is further bolstered by its strong commitment to aiding users of SATA products through free online, telephone, and in-person training services, such as painting tips, forum discussions, useful measurement calculators, video tutorials, and even an encyclopedia of terms.

12. Due to the quality of its products and its international reputation for technological innovation, SATA has achieved extensive sales throughout the United States and the world. In the United States, SATA annually produces and sells in excess of 100,000 paint spray guns and paint spray gun reservoirs. Over the last five years, on average, SATA enjoyed annual sales in the United States in excess of $15 million dollars. Internationally, SATA has annual sales in excess of $80 million dollars.

13. SATA also has prominently and extensively advertised and promoted products and services offered under the SATA Marks, throughout the United States and the world, through such varied media as the internet, newspapers and magazines, and point-of-sale displays. SATA also operates websites at the <sata.com> and <satausa.com> domain names. As a result, SATA has developed substantial and valuable goodwill in the SATA Marks.

14. For many years, SATA has expended millions of dollars annually in advertising and promoting and marketing the SATA Marks in the United States.

### *SATA's Trademark Rights*

15. SATA owns approximately ninety-two (92) United States trademark registrations for a variety of trademarks used in connection with SATA's products (hereinafter the "SATA Marks"). The trademarks at issue in this case are:



-3-

- U.S. Trademark Registration No. 2,770,801 (incontestable), a design mark for a **green** band of color extended around the circumference of a paint spray gun air cap ring, the **green** band being narrower than the air cap ring, covering "paint spray guns"; and

 

- U.S. Trademark Registration No. 2,793,583, (incontestable), a design mark for a band of [any] color extended around the circumference of a paint spray gun air cap ring, the color band being narrower than the air cap ring and of a color that contrasts with the air cap ring, covering "paint spray guns"; and

 

- U.S. Trademark Registration No. 2,774,593 (incontestable), a design mark for a **blue** band of color extended around the circumference of a paint spray gun air cap ring, the **blue** band being narrower than the air cap ring, covering "paint spray guns"; and

 



- U.S. Trademark Registration No. 4,731,525, "5000" for paint spray guns.
- True and correct copies of the marks at issue are attached hereto as **Exhibit A**.

16. Through a long period of usage by SATA, the SATA Marks are well-known and famous to customers and potential customers. The SATA Marks serve as an indicator of the origin and source of the goods sold and provided by SATA.

17. The SATA Marks are arbitrary and inherently distinctive.

### *SATA's Patent Rights*

18. In addition to its federal trademark registrations, SATA also possesses substantial patent rights including, without limitation, seventy-nine (79) patents (both utility and design) registered with the United States Patent and Trademark Office. In this case, there are four design patents at issue: U.S. D459,432, U.S. D459,433, U.S. D770,593, and U.S. D758,537 (hereinafter the "SATA Patents"). Attached hereto as **Exhibit B** are true and correct copies of the SATA Patents.

- U.S. D459,432 ("'432 Patent")

Claim: The ornamental design for a **spray gun head ring**, as shown and described.



FIG. 1



-5-

*Relevant Description*

Those portions of the structures shown in the drawings in form of broken lines represent parts of the gun other than the spray head ring. The specific shape of these parts does not limit the present design. Diagonal hatching in the figures represents **any shade of green coloration**. Open areas adjacent the diagonal hatching signify surface finish(es) that is/are colored or uncolored, including metallic finish, such as chrome, nickel or any other silvery, metallic finish. for a contrasting color spray gun head ring; and

- U.S. D459,433 ("'433 Patent")

Claim: The ornamental design for a **spray gun head ring**, as shown and described.



FIG. 1

*Relevant Description*

Those portions of the structures shown in the drawings in form of broken lines represent parts of the gun other than the spray head ring. The specific shape of these parts does not limit the present design. **Solid black shading represents color contrast in the sense that the area(s) so shaded, which may be of any "color",** for example red, blue or black, is/are in color contrast with adjacent areas of the design. Open areas adjacent the solid black shading signify surface finish(es) that is/are colored or uncolored, including metallic finish, such as chrome, nickel or any other silvery, metallic finish.

-6-

- U.S. D770,593 ("'593 Patent")

Claim: The ornamental design for a paint spray gun, as shown and described.



*Relevant Description*

Ornamental design of the Model 5000 SATA paint spray gun including the various location and stippling of the knobs.

- U.S. D758,537 ("'537 Patent")

Claim: The ornamental design for a paint spray gun rear portion, as shown and described.



*Relevant Description*

Ornamental design of the rear of a Model 5000 SATA paint spray gun.

-7-

### *Discovery of Infringement*

19. On Tuesday, November 1, 2017, SATA representatives visited LVAP's store.

20. SATA had been made aware during the 2017 SEMA show that LVAP was selling several of counterfeit and infringing Auarita/Italco Paint Spray guns (hereinafter "Counterfeit Product(s)").

21. The SEMA trade show is one of the largest annual trade shows canvassing the $477 billion automotive aftermarket industry. Manufacturers and suppliers who attend SEMA represent everything from air conditioning to computer systems, to paint/coating body repair, hand tools, and similarly situated companies.

22. When visiting the store, SATA was assisted by an individual who identified himself as Mr. Robert Sanchez, the Sales Manager for LVAP. The individual also provided the attached business card.



23. When SATA representatives inquired about the availability of the Counterfeit Product, they were informed by Mr. Sanchez that they had recently sold two pallets, but that they could receive a new shipment by request within two weeks.

24. Mr. Sanchez referred to the Counterfeit Products as "knock off SATAs."

25. Mr. Sanchez also said that he had one gun that was returned, a model H-5000, but that he would be willing to sell the gun at a discounted price. Mr. Sanchez provided the box of the product which is shown below.

-8-






26. Below is a comparison showing a genuine SATAjet 5000 compared to the Counterfeit Product sold by the Defendant.



27. The marks shown above on the Counterfeit Products and in the comparison are clearly meant to be confusingly similar in sight, sound and commercial impression to SATA's Marks.

28. On information and belief, the marks were specifically chosen and placed in identical locations on the same type of goods covered by SATA's Marks in order to cause confusion, mistake or deception.

29. On information and belief, as a result of the similarity between the marks and the identical relationship between the respective parties 'products, purchasers of Counterfeit Products are apt to believe that they are somehow connected with, or endorsed or sponsored by SATA, to the harm and detriment of SATA.

30. On or about November 10, 2017, SATA sent LVAP a letter, demanding the LVAP cease its display, advertisement, offer for sales, and sales, of the Counterfeit Products. LVAP did not respond to the Letter.

31. SATA made several other attempts to contact LVAP, however those attempts were unsuccessful.

### COUNT I - TRADEMARK COUNTERFEITING - 15 U.S.C. § 1114

32. SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

33. LVAP has used spurious designations that are identical with, or substantially indistinguishable from, the SATA Marks on identical goods.

34. LVAP has intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale and distribution of the Counterfeit Products.

35. LVAP's use of the SATA Marks to advertise, promote, offer for sale, distribute and sell the Counterfeit Products bearing infringing trademarks was at all times and is currently without SATA's authorization, license, or consent.

36. LVAP's unauthorized use of the SATA Marks on and in connection with LVAP's advertisement, promotion, sale, offering for sale, and distribution of the Counterfeit Products constitutes a use of the SATA Marks in commerce.

37. LVAP's unauthorized use of the SATA Marks is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that the Counterfeit Products is legitimate, and/or that the Counterfeit Products is authorized by, sponsored by, or approved by SATA, or that LVAP is affiliated with, connected to, associated with, or in some way related to SATA; (c) result in LVAP unfairly benefiting from SATA's advertising and promotion; and (d) result in LVAP unfairly profiting from SATA's reputation and trademarks all to the substantial and irreparable injury of the public, SATA, the SATA Marks, and the substantial goodwill they represent.

38. LVAP's acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39. By reason of the foregoing, LVAP is liable to SATA for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at SATA's election, an amount representing three (3) times SATA's damages and/or LVAP's illicit profits; and (b) reasonable attorney's fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

40. SATA is also entitled to temporary, preliminary, and permanent injunctive relief pursuant to 15 U.S.C. § 1116(d).

**COUNT II - TRADEMARK INFRINGEMENT - 15 U.S.C. § 1114**

41. SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

42. Without SATA's authorization, license, or consent, LVAP has knowingly used and continues to use in commerce the SATA Marks in connection with the manufacturing, adverting, promoting, importing into, and selling in the United States the Counterfeit Products. LVAP has used the SATA Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to, and/or trade off SATA's fame and the registered SATA Marks.

43. LVAP's use of the SATA Marks is likely to: (A) confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of LVAP and SATA and/or the Counterfeit Products and SATA's products; and (B) is likely to cause such people to believe in error that the Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by SATA or that the Counterfeit Products is in some way affiliated with SATA.

44. SATA has no control over the LVAP's use of the SATA Marks. Therefore, SATA's reputation and goodwill has been and continues to be damaged – and the value of the SATA Marks jeopardized – by LVAP's continued use of the SATA Marks and colorable



-12-

imitations thereof. Because of the likelihood of confusion between the Counterfeit Products and the SATA Marks, any defects, objections, or faults found with the Counterfeit Products will negatively reflect upon and injure the exceptional reputation that SATA has established for the products and services it offers in connection with the SATA Marks. As such, LVAP is liable to SATA for infringement of the SATA Marks pursuant to 15 U.S.C. § 1114.

45. LVAP's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to SATA's trademarks, business, reputation, and goodwill. SATA has no adequate remedy at law as monetary damages are inadequate to compensate SATA for the injuries caused by LVAP to its trademarks, business, reputation, and goodwill.

46. As a direct and proximate result of LVAP's conduct, SATA has suffered and continues to suffer damages to its valuable SATA Marks, and other damages in an amount to be proven at trial.

47. LVAP's infringement of SATA's registered trademarks is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the SATA Marks, and an exceptional case within the meaning of 15 U.S.C. § 1117(b).

48. SATA is entitled to temporary, preliminary, and permanent injunctive relief, as well as an award of LVAP's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT III - FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION - 15 U.S.C. § 1125**

49. SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

50. LVAP's use, promotion, offers to sell, sale, and/or importation of the Counterfeit Products violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The SATA Marks are federally registered, and are entitled to protection under both federal and common law. The SATA Marks have distinctive appearances with unique and non-functional designs. SATA has

extensively and continuously promoted and used the SATA Marks for many decades in the United States and worldwide. Through that extensive and continuous use, the SATA Marks have become well-known indicators of the origin and quality of SATA's products and have acquired substantial secondary meaning in the marketplace.

51. LVAP's use of colorable imitations of the SATA Marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Counterfeit Products by creating the false and misleading impression that the Counterfeit Products are manufactured by, authorized by, or otherwise associated with SATA.

52. LVAP's use of colorable imitations of the SATA Marks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to SATA for which SATA has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the SATA Marks.

53. On information and belief, LVAP's use of colorable imitations of the SATA Marks has been intentional and willful. LVAP's bad faith is evidenced at least by LVAP's use of marks identical to the SATA Marks on the Counterfeit Products. SATA is entitled to injunctive relief, and SATA is also entitled to recover LVAP's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

**COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT
& UNFAIR COMPETITION**

54. SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

55. SATA was the first to use the SATA Marks. As a result of SATA's continuous promotion and sales of products bearing the SATA Marks, the SATA Marks have become widely known and SATA has been identified in the public mind as the manufacturer of the products to which the SATA Marks are applied.

Case 2:17-cv-03101-GMN-CWH   Document 1   Filed 12/21/17   Page 15 of 19

56. As a result of the experience, care, and service of SATA in producing the products to which the SATA Marks are applied, these products have become widely known and have acquired a worldwide reputation for quality, styling, and utility. Moreover, the SATA Marks have come to symbolize SATA's reputation for quality and excellence. The SATA Marks have also acquired secondary meaning in the marketplace, and are non-functional.

57. LVAP, with knowledge of and with intentional disregard of SATA' rights, continues to advertise, promote, and sell products using the SATA Marks, or colorable and confusing imitations thereof. LVAP's acts are likely to cause, have caused, and will continue to cause confusion as to the source and/or sponsorship of SATA's products and services.

58. LVAP's acts alleged herein and specifically, without limitation, LVAP's use, manufacture, promotion, offers to sell, selling, and/or importing into the United States products that are confusingly similar to products bearing the SATA Marks, infringes SATA' exclusive trademark rights in violation of the common law.

59. LVAP's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to SATA's trademarks, business, reputation, and goodwill. SATA has no adequate remedy at law because monetary damages are inadequate to compensate SATA for the injuries caused by LVAP to its trademarks, business, reputation, and goodwill.

60. LVAP's use of colorable imitations of the SATA Marks has been intentional and willful. LVAP's bad faith is evidenced at least by LVAP's use of marks identical to the SATA Marks on the Counterfeit Products. SATA is entitled to injunctive relief, and SATA is also entitled to recover LVAP's profits, actual damages, punitive damages, costs, and reasonable attorneys' fees.

**COUNT V- DESIGN PATENT INFRINGEMENT - 35 U.S.C. §§ 171 AND 289**

61. SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

///



-15-

62. Without SATA's authorization, license, or consent, LVAP has and is continuing to make, use, offer to sell, sell, and/or import into the United States its Counterfeit Products, which infringe SATA's Patents U.S. D459,432, U.S. D459,433, U.S. D770,593, and D758,537.

63. LVAP infringes on the SATA Patents because, *inter alia,* in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of paint spray guns and packaging claimed and disclosed in SATA Design patents are substantially the same as the LVAP's Counterfeit Products. The resemblance is as such that an ordinary observer, would likely purchase the LVAP's Counterfeit Products, believing it to be SATA's products.

64. LVAP's acts of infringement of the SATA Patents were undertaken without authority, permission, or license from SATA. LVAP's activities violate 35 U.S.C. § 271.

65. SATA has been and continues to be irreparably harmed by LVAP's past and ongoing infringement of SATA's Patents.

66. LVAP's infringement of SATA's Patents has caused SATA to suffer damages in an amount to be determined at trial.



**PRAYER FOR RELIEF**

WHEREFORE, SATA respectfully prays for:

A. Judgment that LVAP has: (i) willfully engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114; (ii) willfully infringed the SATA Marks in violation of 15 U.S.C. § 1114; (iii) willfully used false designations of origin and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (iv) willfully violated SATA's common law rights in the SATA Marks; and (v) willfully infringed the SATA Patents in violation of 35 U.S.C. §§ 171 and 289;

B. A temporary, preliminary, and permanent injunction against further counterfeiting, infringement, false designation of origin, and unfair competition directed against the SATA Marks, by LVAP, its agents, servants, employees, attorneys, and all others in active concert or participation with any of them;

C. A finding that this is an exceptional case within the meaning of 15 § U.S.C. 1117(a);

D. An award of damages adequate to compensate SATA for the trademark infringements that have occurred pursuant to 15 U.S.C. § 1117(a), which amount shall include LVAP's profit's, SATA's damages, and the costs of the action;

E. At SATA's election, either: (1) an award of damages adequate to compensate SATA for the intentional acts of trademark counterfeiting that have occurred, pursuant to 15 U.S.C. § 1117(b), which amount shall include three times of LVAP's profits or SATA's damages (whichever is greater), together with reasonable attorneys' fees; or (2) statutory damages in the amount of: (i) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just; or (ii) if the Court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just;



F.	An award of damages adequate to compensate SATA for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, or an award of LVAP's profits from its infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with prejudgment interest and costs; and

G.	Such other and further relief as this Court deems just and proper.

DATED this 21st day of December, 2017.

        DICKINSON WRIGHT PLLC

        /s/ Steven A. Caloiaro
        STEVEN A. CALOIARO
        Nevada Bar No. 12344
        Email: scaloiaro@dickinsonwright.com
        8363 West Sunset Road, Suite 200
        Las Vegas, Nevada  89113-2210
        Tel: (702) 550-4400
        Fax: (844) 670-4009

        *Attorneys for Plaintiff*
        *SATA GmbH & Co. KG*



**EXHIBIT TABLE**

| Exhibit | Description | Page(s)[1] |
|---|---|---|
| A | True and correct copies of SATA U.S. Trademark Registration Certificates | 5 |
| B | True and correct copies of the SATA U.S. Patents | 52 |

---

[1] Exhibit page counts are exclusive of exhibit slip sheets.